May it please the Court, Willoughby alleged disability based on fibromyalgia. The Administrator Law Judge rejected the presence of fibromyalgia. Willoughby submits that the ALJ and the examiners upon whom he relied failed to either understand how to diagnose and or assess fibromyalgia. As a result, it is her position that the ALJ improperly rejected the treating physician's opinion. I want to speak specifically to those reports relied upon by the ALJ and to explain to the Court why they do not support the ALJ's rejection of Ms. Willoughby's fibromyalgia. First, the Administrative Law Judge relied upon the consultative report of Dr. Laster. Dr. Laster was a pediatric neurologist who examined Ms. Willoughby on behalf of the Social Security Administration. As defendant notes several times in her brief, Dr. Laster conducted a neurological evaluation. This is not how fibromyalgia is assessed. Dr. Laster's unfamiliarity with fibromyalgia is best exemplified by the following portion of his report, and I quote, the diagnosis of fibromyalgia remains a controversial one in terms of documentation of any objective features. Since the disability is a subjective one, it is not possible to prove any objective functional loss, unquote. This is not accurate. It runs contrary to what the American Rheumatological Association and the medical community in general knows about fibromyalgia. Specifically, fibromyalgia is recognized by the presence of widespread muscle pain and a variety of symptoms, such as poor sleep, anxiety, fatigue, or other mood disorder. Counsel? Yes, Your Honor. In your view, what diagnosis in the record definitively establishes fibromyalgia? Dr. Abel, the treating physician, noted the presence of multiple tender points. Tender points are the only objective criteria by which we can assess fibromyalgia. He stated this ‑‑ Counsel, did he make a definitive diagnosis of fibromyalgia? He did, Judge Rawlinson. Where is that in the record? Excuse me for one moment while I find that. He did so in April of ‑‑ at least one tender point. He said compatible with fibromyalgia is my recollection of the record. This is on page 144 of the district court transcript where he notes positive tender points. In addition to Dr. Abel, one of the ‑‑ Where is that in the record? There was, Your Honor. He writes in April of 2001, mildly positive tender points. And on the top ‑‑ Okay. Let me ask you this. Was there a finding of disability, an opinion of disability by Dr. Abel as a result of what you say was a fibromyalgia diagnosis? No, Your Honor. And that is not outcome determinative. And I'd like to speak to that if I might. Number one, it is not Willoughby's burden to prove that a physician has said that she's disabled. It is her burden, however, to prove that she suffers from a medically determinable impairment that precludes her from returning to her past relevant work. She believes that she has done that. This position ‑‑ Counsel, what case authority are you relying upon to support your argument that it's not the claimant's burden to prove disability? Ultimately, the burden ‑‑ it's noted in opposing counsel's brief, Your Honor. One case I would cite would be McAllister, which is a case that speaks to that very point. Was that case cited in your brief? No, Your Honor. But it's been longstanding Ninth Circuit case law that a disability claimant does not have to prove that a physician has said that they are disabled. Their only burden is to prove disability at step four. This is true. But there are lots of people walking around with fibromyalgia who are not disabled who can do work. Understood, Your Honor. So in terms of your argument, if we accept the fact that there was a diagnosis or a diagnosis at least of probable fibromyalgia at some point, how far does that get you? To the extent, Judge Schroeder, that the district court's decision is reviewed de novo, the way I read the district court decision is as follows, to answer your question as best as I can. The district court said, Dr. Abel, pointing out what Judge Rawlinson just asked, never said that Ms. Willoughby was disabled. The district court said that she was capable of performing low-stress work. Part and parcel of that, quoting Dr. Abel's report, Dr. Abel said that she would have problems concentrating throughout a workday because of pain. Now, if we look at the record and look at the work she did as an engineering aide, this is clearly not low-stress work. She worked in the aerospace industry. She was involved with budgets that involved multimillion-dollar amounts. The administrative law judge, unfortunately, never made a finding of fact on this. So looking at the job as she did it, the way I'm reading the record, she's at least met her burden at step four. She cannot return to her past-present work. What are we reviewing here? I'm sorry? We aren't directly reviewing the district court. That's correct, Your Honor. But even if that – even with that said, Judge Schroeder, if we look at the judge's finding at the administrative level, he said she could return to her past-relevant work. He got to that point by rejecting Dr. Abel's conclusion. And if the Court accepts Dr. Abel's conclusion that she can do no better than do low-stress work, with that alone, it warrants a remand. I respectfully would like to reserve the balance of my time. All right. Thank you. Good morning. My name is Mark Winn, appearing for Joanne Barnhart, Commissioner of Social Security. Substantial evidence supports the ALJ's decision not to formally find probable myalgia as an impairment. When Dr. Abel first diagnosed probable myalgia, he said it was only probable probable myalgia. And later on, he said the tender points were only on the back. What's significant is – it's also in Rollins v. Mastinari, which I cite in the briefing, which says that you have to meet 11 out of 18 tender points to even sustain a diagnosis of probable myalgia. At one point later on, Dr. Abel only says that she had mildly positive tender points. And one treating doctor even later on says that – he puts question marks around the diagnosis, puts question mark, probable myalgia, question mark. Wait, wait. Abel is the treating physician. Correct. But another treating physician from Kaiser also treated her one day and that's on page – page 16 of the excerpts of record. That – that showed also just the fact that it's not a hard-pass diagnosis and that that physician also had some doubts about whether that was a diagnosis by putting the question marks. Later on, another physician said in August 2001 that Klayman had hand pain of unknown etiology without referring to any etiology of probable myalgia. Nobody ever said she didn't have it. Dr. Perry, later on, reviewing physician, did say that she didn't have enough tender points. No, no, no treating physician ever said that she didn't have it. No treating physician, as far as I know, said that she did not have it. But they did show doubts. So your argument is that they didn't rule it in and they didn't rule it out. Correct. And it is the burden, contrary to Collins' argument, to prove first the establishment of a medically determinable impairment as well as the fact that they are disabled either can't work. I'm sorry. What did the ALJ find exactly with respect to fibromyalgia? Didn't find that it was a severe impairment. But found that there was fibromyalgia? I did not find that either. But did accept limitations based on her longitudinal history of pain. That was by Dr. Jackson. And that's why the ALJ accepted that opinion and found that she could be limited to light work, which is 20 pounds, 10 pounds. So what did he do with the treating physician? He did reject Dr. Abel's opinion, partially because of... He did? He did reject. He did it, yes. Yes. He did reject it, even though a reading of Dr. Abel's report shows that it is very consistent with the claimant's past relevant work. It's notable that Dr. Abel's report, he does say that when he filled it out, that it had been many months since he had treated the claimant. And as a result, he refused to comment on a constellation of very relevant categories. He expressed a decline. He said, I cannot comment on the location of pain or the nature of frequency and severity of any pain. He also wouldn't make any specific references about walking, standing, sitting, or make any specific findings or opinion about hand pain or postural limitations. And he also said he cannot predict how many times she would be absent from work. But he did say that she could lift 10 pounds, which is consistent with her past relevant work. Furthermore, he did say that she had to shift positions, which is also consistent with her past relevant work. And furthermore, he did say that she can, in fact, perform low-stress jobs. And as far as low-stress jobs, it is the burden, it is the claimant's burden to show that she cannot perform her past relevant work. That's the Matthews v. Shalala. And because of that ‑‑ Why did the ‑‑ just send me back again. Why did the ‑‑ why did the ‑‑ why did the ‑‑ why was the treating physicians ‑‑ why was Abel not accepted, discredited? It was inconsistent with objective record, which includes the opinions that we talked about. Do you have law that you have to explain more than that? Yeah, and what the law says is you have to set a recitation of the findings and have your opinion thereof of those findings. And that's exactly what the ALJ did. But don't we have a lot of cases that it's not enough if someone is ‑‑ if a treating physician says that there's pain to say, well, another doctor said that there was no objective basis for that? If you kind of ‑‑ if you bifurcate the analysis between treating physician evidence and credibility, in the law regarding treating physicians, the lack of support of objective findings is a legitimate reason for rejecting a physician's findings. That's the Magellanes v. Barnhart. And many case law cited after that in Thomas v. Barnhart. So, Your Honor, objective findings and lack thereof is a legitimate reason and has always been a good reason for rejecting a physician's report. The disease, though, that he is claiming to have would have, would have, if it was just objective findings, you'd have a little problem when you say no objective findings because, as you point out, it's very difficult to diagnose. It is difficult to diagnose, Your Honor. One of the hallmarks is the 11 of 18 tender points. And I gather your point is that somebody has said that there were not 11. There were not 11. That's what Dr. Perry said. There does not appear to be enough tender points. And even over in the ‑‑ He was the non‑treating ‑‑ he was the reviewing physician? Yes. Yeah. Well. And at the same time, there are no ‑‑ he did review the treating physician records. And if those tender points did exist, then those are the ‑‑ Touched her. He never touched her. But those who did touch her never said that she met the requisite points and would only say that she was mildly tender and some would give provisional diagnoses of that. And as far as being the lowest‑dressed job, that is the burden, appellant's burden. And there was no testimony presented that would indicate at all that it was a stressful job in any way. And there's no argument before the district court either. And furthermore, she was working at the job for 15 years and there's no complaints about it. That's also in the testimony. And that considered, there's just no evidence that it was a stressful job. And that's not to take away from the fact that it was ‑‑ it's her burden to prove that. Before you sit down, you might want to tell us what, in your view, the bottom line of our decision should be. The fact is no physician treating her otherwise said she was disabled. It is the burden. It is her burden to show she was disabled. But Dr. Abel's report. Yeah, but she doesn't have to ‑‑ she doesn't have to ‑‑ she has to prove a condition. She doesn't ‑‑ there's no magic word. She has to prove that she was unable ‑‑ the way disability is defined is she was unable to do her past relevant work. And that's where we ‑‑ this case was decided. And beyond that, it was ‑‑ What does the record show about what the nature of her work was? The work was engineering ‑‑ as an engineering aide, which involved a lot of typing and reviewing documents. And sometimes it was ‑‑ it involved weighing or lifting less than 10 pounds at a time. Very minimal demands. That's why with the record we have of the physicians who did look at her, examining, non‑examining and treating, none of them said that when you take their limitations, none of those would in any way show that she couldn't do that past relevant work. I'm touching also on credibility. The case law and rulings also say that these opinions are highly relevant to the credibility analysis. And the fact that all these physicians, when you take even ‑‑ whether you accept their diagnosis or not, didn't find that she couldn't do her past relevant work. That's highly probative. As well as the fact that the ALJ also looked at her activities, including her vacation to Europe. I think it was 14 countries. All these together support the ALJ's finding that she could still work and do the minimal demands of her past relevant work. Thank you. Thank you. Several points. First, as far as your last question, Judge Schroeder, in terms of the claimant's past relevant work, the ALJ addressed only the physical demands of the job. He didn't address the mental demands of the job. On page 96 of the district court transcript, as I noted earlier, she describes in great detail the sophisticated nature of the so‑called mental part of the job. She had to use engineering drawings, input from various engineers. She had to create method sheets, use a computer, and follow very detailed step‑by‑step instructions. This is clearly not a low‑stress job. Secondly, in response to Judge Rawlinson's earlier question about whether an attorney, a claimant, has to prove ultimately that she's disabled or merely meet her burden at step four, I refer you to the Sanchez case recited by the defendant at page 10 of their brief. Insofar as the question of tender points, I'm not suggesting to the panel that there is indeed the presence of 11 tender points. However, in my preparation for today's oral argument, I read a great deal. And ultimately, where the medical community stands today with respect to fibromyalgia is as follows. They've backed away from the requirement that there indeed be 11 tender points. No. The problem is we're going to have to decide that based on the record. That's correct. I understand, Your Honor. Is that in the record? No, sir, it's not. And I was remiss in failing to include that in my reply brief. There is a suggestion by the commissioner in Social Security ruling 92 ‑‑ that indeed there's no longer this 11 tender point litmus test. Rather, it's the question of whether or not there is multiple pain in various parts of the body. And clearly, Willoughby has shown that. Finally, as far as the administrative law judge, in part, in very large part, he rejected Dr. Abel's report because he thought that Willoughby walked in and basically said, I have fibromyalgia. I know it. That's what I want you to write down. And clearly, no physician is going to do that. Thank you very much. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case for argument, which is Morley v. AutoNation.
judges: Schroeder, Farris, Rawlinson